IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| LUKE BAILEY, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:14CV303 |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Luke Bailey, Jr. ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.   PROCEDURAL HISTORY

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income Benefits on December 16, 2011, alleging a disability onset date of August 20, 2011. (Tr. at 175-90.)[1]  His applications were denied initially (Tr. at 75-88) and upon reconsideration (Tr. at 89-106).  Thereafter, Plaintiff requested an administrative hearing de

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #10].

novo before an Administrative Law Judge ("ALJ"). (Tr. at 124-25.) Plaintiff attended the subsequent hearing on July 15, 2013, along with his attorney and an impartial vocational expert. (Tr. at 20.)

The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act. (Tr. at 29). On February 3, 2014, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-5).

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted).

"If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

3

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC,

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date. Plaintiff therefore met his burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar spine, diabetes mellitus, hypertension, and sleep apnea. (Tr. at 22.) The ALJ found at step three that none of these impairments met or equaled a disability listing. (Tr. at 22-23.) Therefore, the ALJ assessed Plaintiff's RFC and determined that he could perform light, unskilled work with myriad postural and environmental limitations. (Tr. at 23.) Based on this determination, the ALJ found under step four of the analysis that Plaintiff could not

return to any of his past relevant work. However, based on the vocational expert's testimony, the ALJ determined at step five, that, given Plaintiff's age, education, work experience, and RFC, he could perform other jobs available in the national economy. (Tr. at 28.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Id. at 29.)

Plaintiff now argues that the ALJ erred by failing to (1) evaluate his back impairment under 20 C.F.R., Part 404, Subpt. P, Appx. 1, § 1.04C (hereinafter "Listing 1.04C"), (2) recognize his additional severe impairments, and (3) properly assess his RFC. Because the Court finds that Plaintiff's contention regarding Listing 1.04C merits remand, the Court need not address the two additional issues at this time.

A.  Listing 1.04C

At step three of the sequential analysis, the ALJ did not consider the applicability of Listing 1.04C to the facts of Plaintiff's case. In fact, the ALJ's decision omits any mention of specific listings, and instead offers a blanket statement that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. at 23.) Plaintiff now claims that the ALJ's failure to specifically mention or discuss Listing 1.04C constitutes error.

Notably, an ALJ is not required to explicitly identify and discuss every possible listing; however, he is compelled to provide a coherent basis for his step three determination, particularly where the "medical record includes a fair amount of evidence" that a claimant's impairment meets a disability listing. Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). Where such evidence exists but is rejected without discussion, "insufficient legal analysis

6

makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings." Id. (citing Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986)). In reviewing the ALJ's analysis, it is possible that even "[a] cursory explanation" at step three may prove "satisfactory so long as the decision as a whole demonstrates that the ALJ considered the relevant evidence of record and there is substantial evidence to support the conclusion." Meador v. Colvin, No. 7:13-CV-214, 2015 WL 1477894, at *3 (W.D. Va. Mar. 27, 2015) (citing Smith v. Astrue, 457 F. App'x 326, 328 (4th Cir. 2011)). Nevertheless, the ALJ's decision must include "a sufficient discussion of the evidence and explanation of its reasoning such that meaningful judicial review is possible." Id. If the decision does not include sufficient explanation and analysis to allow meaningful judicial review of the ALJ's listing determination, remand is appropriate. Radford, 734 F.3d at 295.

In the present case, Defendant argues that Radford is inapplicable because Plaintiff "did not satisfy all of the required criteria of Listing 1.04C." (Def.'s Br. [Doc. #17] at 9.) In particular, Defendant contends that "Plaintiff did not have the required weakness or the inability to ambulate effectively." (Id.) In considering this contention, the Court notes that Defendant is correct that, to meet a listing, a claimant must meet *all* of the specified criteria, see Sullivan v. Zebley, 493 U.S. 521, 530 (1990). However, the issue in the present case, as in Radford, is not whether Plaintiff met Listing 1.04. Rather, the question is whether there was sufficient evidence in the record to trigger the potential applicability of Listing 1.04, and, if so, whether the ALJ's explanation and analysis, as a whole, is sufficient to allow judicial review of the step three determination as to that Listing.

7

To meet Listing 1.04, a claimant first must show a disorder of the spine, such as a "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, [and/or] vertebral fracture . . . resulting in compromise of a nerve root (including the cauda equina) or the spinal cord." 20 C.F.R., Part 404, Subpt. P, Appx. 1, § 1.04. To meet part C of the Listing, he then must demonstrate "[l]umbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b." 20 C.F.R., Part 404, Subpt. P, Appx. 1, § 1.04C. Section 1.00B2b(1) further specifies that

> [i]nability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

20 C.F.R., Pt. 404, Subpt. P, Appx. 1, § 1.00B2b(1). Section 1.00B2b(2) then goes on to provide "examples of ineffective ambulation," which

> include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, . . . the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.

20 C.F.R., Pt. 404, Subpt. P, Appx. 1, § 1.00B2b(2).

In the present case, the ALJ included degenerative disc disease of the lumbar spine among Plaintiff's severe impairments at step two of the sequential analysis, and "[a]n MRI dated October 3, 2011 showed spondylitic changes at [the] L3-L4 level with moderate spinal stenosis at L4-L5 and facet hypertrophy." (Tr. at 22, 25 (citing Tr. at 300)); (see also Tr. at

8

325, 520, 579 (documenting MRI findings of lumbar spinal stenosis)). A second MRI from January 29, 2013 again indicated spinal stenosis and further noted "circumferential epidural lipomatosis beginning at the L4 level, which progressively restricts [the] thecal sac distally . . . and envelop[s] the descending nerve roots." (Tr. at 579.) In other words, the "medical record includes a fair amount of evidence" that Plaintiff met the requirements in Listing 1.04's introductory paragraph.

The ALJ's decision also reflects that, as early as 2008, Plaintiff "alleged frequent pain aggravated by walking, standing[,] and lifting," and noted "improvement in his symptoms just by sitting" (Tr. at 24), which is consistent with pseudoclaudication. In addition, as noted by Plaintiff, evidence in the record indicates instances of nonradicular pain, an antalgic gait, pain with walking, and complaints of weakness, including "give way" weakness at times. The record includes evidence that Plaintiff used a motorized scooter for shopping, that he required an assistive device for walking distances, and that he was prescribed a rolling walker in connection with his lumbar canal stenosis, suggesting at least some evidence that he meets the requirements of 20 C.F.R., Pt. 404, Subpt. P, Appx. 1, § 1.00B2b. (See Tr. at 572-73, 591.)

Nevertheless, as noted above, the ALJ's discussion at step three does not include any explanation or analysis of any specific listing. The ALJ's subsequent RFC discussion notes that Plaintiff "was prescribed a walker in 2012[,] and he alleges that he uses it quite regularly for ambulating, balancing[,] and resting. Nevertheless, the objective clinic findings do not support the alleged weakness." (Tr. at 23.) From this brief statement, the Court is unable to determine whether the ALJ intended to find that (1) Plaintiff experienced no weakness at all,

9

or that (2) his reported weakness was simply not as severe as alleged. Because Listing 1.04(C) requires weakness, but does not define the extent, this distinction is significant. In addition, with respect to Plaintiff's alleged inability to ambulate effectively, it is not clear whether the ALJ intended to reject completely Plaintiff's alleged need for the walker. The ALJ did note that Plaintiff "ambulated without the use of an assistive device in January 2012." (Tr. at 24.) However, the walker was prescribed for Plaintiff later in 2012, and as the Fourth Circuit emphasized in Radford, "'abnormal physical findings may be intermittent,' but a claimant may nonetheless prove a chronic condition by showing that he experienced the symptoms 'over a period of time,' as evidenced by 'a record of ongoing management and evaluation.'" 734 F.3d 294 (citations omitted). In any event, the Court cannot conclude that the ALJ's brief discussion of Plaintiff's weakness in the context of his RFC assessment constitutes "an equivalent discussion of the medical evidence relevant to the Step Three analysis which allows [the reviewing court] readily to determine whether there was substantial evidence to support the ALJ's Step Three conclusion." Meador v. Colvin, No. 7:13-CV-214, 2015 WL 1477894, at *3 (citations omitted).

Finally, to the extent that Defendant attempts to cite other evidence in the record to support the conclusion that Listing 1.04(C) does not apply, this Court will not undertake an analysis that is not reflected in the ALJ's decision. See generally SEC v. Chenery Corp., 332 U.S. 194, 196 (1947). Indeed, Radford instructs that where, as here, there is conflicting evidence in the record as to whether the claimant satisfies a Listing, but insufficient analysis or explanation of the issue by the ALJ, remand offers the best course of action. 734 F.3d at 296. Notably, Radford involved examinations in which the claimant "exhibited no

weakness, sensory loss, or limitation of motion" as required by section A of Listing 1.04, which was at issue in that case, and Radford's physician "opined more than once that [his] pain was inconsistent with his physical findings." Id. Nevertheless, the Fourth Circuit concluded that "[g]iven the depth and ambivalence of the medical record, the ALJ's failure to adequately explain his reasoning precludes this Court . . . from undertaking a 'meaningful review' of the finding that Radford did not satisfy" the listing at issue. Id. Here, as in Radford, "a fair amount of evidence" in the record supports Plaintiff's claim, and the ALJ's failure to provide any explanation or analysis as to his step three determination precludes the Court from undertaking meaningful review of the ALJ's step three finding. Therefore, the Court recommends remand of this matter to the ALJ with instructions to specifically consider Listing 1.04C.[4]

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #16] should be DENIED, and Plaintiff's First Motion for Judgment Reversing or Modifying the Decision of the Commissioner of the Social Security Administration or Remanding the Cause for a

---

[4] To the extent that Plaintiff raises other challenges to the ALJ's decision in this case, those are matters that Plaintiff can address further with the ALJ in light of the remand.

Rehearing [Doc. #13] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 8th day of September, 2015.

                                                    /s/ Joi Elizabeth Peake
                                                  United States Magistrate Judge